# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### Civil Action:  1:20-cv-1031

| | | |
|---|---|---|
| **TINERA PORTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **COMPLAINT** |
| **v.** | ) | |
| | ) | |
| **NOVANT HEALTH, INC., NOVANT** | ) | |
| **HEALTH CORPORATE,** | ) | |
| | ) | |
| **Defendants.** | | |

_____

The plaintiff, Tinera Porter, complaining of defendants, alleges the following:

## JURISDICTION AND VENUE

1.      Plaintiff has instituted this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (Title VII), 42 U.S.C. § 1981, and the public policy of North Carolina to recover damages for the violation of her civil rights. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e–5(f) and 28 U.S.C. § 1331.

2.      Plaintiff resides in, the acts described herein occurred within, and defendants transact business in the Middle District of North Carolina.  Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

1

## PARTIES

3.        The plaintiff, Tinera Porter, is a resident of Forsyth County, North Carolina. At all times pertinent to this action, plaintiff was an "employee" of defendants within the meaning and definition of Title VII, 42 U.S.C. § 1981, and North Carolina law.

4.        The defendant Novant Health, Inc. is a corporation established pursuant to the laws of the State of North Carolina, which operates medical facilities throughout North Carolina and other states in the Southeastern United States.

5.        Upon information and belief, defendant Novant Health Corporate is a corporation established pursuant to the laws of the State of North Carolina, which operates medical facilities throughout North Carolina and other states in the Southeastern United States. Upon information and belief, defendants Novant Health, Inc. and Novant Health Corporate are alternative names for plaintiff's employer and the companies are one and the same.

6.        At all times pertinent to this action, defendants collectively employed over 500 employees, and were the "employer" of plaintiff within the meaning and definition of Title VII, 42 U.S.C. § 1981, and the common law of North Carolina. Unless otherwise specified, defendants shall be collectively referred to hereafter as "defendant" or "Novant."

## FACTS

7.        Plaintiff is an African-American female.

8.        Plaintiff was employed by defendant from February 11, 2013 until March 19, 2019, as a Talent Acquisition Specialist in the Human Resources (HR) department. When hired by defendant, plaintiff had nearly 20 years of experience in recruiting and HR.

2

9.      As a Talent Acquisition Specialist, plaintiff managed all phases of recruitment for new hires of defendant, while implementing legally compliant HR programs and recruiting tools, and anticipating the needs of and collaborating with her business partners.

10.     At all times during plaintiff's employment, she met or exceeded all reasonable expectations of her employer in the performance of her duties, and routinely received excellent evaluations and commendations for her work. Prior to March, 2019, plaintiff was never the subject of any significant disciplinary action and was never made aware of any significant performance problems.

11.     During the time in which she worked for defendant, plaintiff was committed to furthering specific initiatives to increase diversity in the workplace.  Nevertheless, plaintiff was unwilling to recruit minority candidates through methods that were contrary to company policy or violated state or federal law.

12.     In 2018, the Novant Vice President (VP) that oversaw plaintiff's division in HR directed plaintiff to identify and hire diverse candidates by utilizing methods that were in violation of company policy and the law. Plaintiff refused, but offered specific and legitimate means of attracting minority candidates, such as through approved recruitment services enacted and operated to attract and place minority candidates.

13.     The VP angrily rejected plaintiff's suggestion, and again urged plaintiff to shortcut the process through illegitimate means.  Plaintiff made clear her objections, and her intentions to follow company policy and the law, which she continued to do.

3

14.     On February 22, 2019, counsel from defendant's legal department contacted plaintiff and requested that she contact an outside firm that had been asked by defendant to interview plaintiff as part of an investigation.

15.     On February 25, 2019, plaintiff and the investigator discussed the VP and the illicit hiring practices she had directed plaintiff to undertake.

16.      During that conversation, the investigator disclosed to plaintiff that two other HR employees had contacted a Novant employee alert line to disclose identical inappropriate and illegal directives by the VP to identify and recruit minority candidates. Plaintiff acknowledged that the VP had given her the same instructions, which she had objected to and refused.

17.     The day following plaintiff's conversation with the investigator, the VP called plaintiff and berated her, allegedly about a personnel issue that had already been resolved. Accordingly, plaintiff reasonably understood that the VP was aware of and furious about her participation in the investigation, as she had no other reason to be angry.

18.     Approximately one week later, on or about March 4, 2019, plaintiff was scheduled to interview for a Lead Talent Acquisition position, which would have been a promotion to a position for which plaintiff was well-qualified.  Prior to the interview, however, plaintiff was told by two Novant managers, who reported to the VP, that she would no longer be considered for the position, purportedly for "not communicating well" via email with a medical provider.  The reprimand, which was the first of any kind that plaintiff had received in 6 years, was transparently and demonstrably false.

4

19.     The Novant managers additionally informed plaintiff that she had been "condescending" in a phone call the previous November.  When plaintiff asked follow-up questions regarding the two alleged incidents, she was told only that she was too "analytical" and too "process and procedures" oriented.  The managers were unable to give plaintiff any details or specifics regarding the criticism.

20.     At the conclusion of that meeting, the managers told plaintiff that they would have to initiate the progressive discipline policy, and that they would set a follow-up meeting to discuss the allegations.  The critiques, reprimand, and alleged institution of the progressive discipline policy were clear retaliation for plaintiff's objection to discriminatory employment practices in the workplace, and her participation in the investigation regarding those practices.

21.     Approximately two weeks later, on March 19, 2019, one of the managers met plaintiff in the parking lot when she arrived for work.  Saying very little, she led plaintiff into an office, where the other manager was waiting, and terminated her.  There had been no follow-up meeting, and no one had further discussed the alleged performance issues with plaintiff or initiated the progressive discipline policy between the March 4 meeting and her termination.

22.     When the managers terminated plaintiff, they provided a letter that repeated the same baseless, ambiguous, and false allegations that were made in the March 4 meeting.  Plaintiff was given no further information regarding her dismissal.

5

23.     As noted above, the termination of plaintiff – a longtime high-performing employee with no history of performance problems or disciplinary issues – was only three weeks following her participation in the investigation.  The termination was clearly retaliation for objecting to discriminatory hiring practices and discussing those practices with independent counsel during the investigation.

## ADMINISTRATIVE REMEDIES

24.     On August 23, 2019, plaintiff filed EEOC Charge # 435-2019-01108, with the Equal Employment Opportunity Commission (EEOC) in Greensboro, North Carolina. Plaintiff's charge alleged race and retaliation. On August 18, 2020, EEOC issued notice of plaintiff's right to sue with respect to her charge against the defendants.  Plaintiff has complied with all procedural prerequisites prior to filing this claim.

### FIRST CLAIM FOR RELIEF
### Race Discrimination in Violation of Title VII of the
### Civil Rights Act of 1964, *as amended*

25.     Plaintiff incorporates the foregoing paragraphs as if fully set out herein.

26.     At all times pertinent to this action, plaintiff was within a protected class as an individual of African-American race, ancestry, and descent, she complained of and opposed discriminatory hiring practices that were in violation of Title VII, and her performance was superior to that of non-African-Americans, Caucasian employees, and those who had not complained of and opposed discriminatory hiring practices.

27.     Following her objection to discriminatory hiring practices and her assistance and participation in the investigation into the same, she was retaliated against, not considered

6

for a promotion, subjected to unfounded disciplinary actions, and ultimately terminated over a period of three weeks.

28.     Defendant's reasons for the termination of plaintiff were pretextual, and unworthy of belief.

29.     Defendant wrongfully and intentionally discriminated against plaintiff because of her race, African-American, and because of her objection and opposition to discriminatory hiring practices in violation of Title VII, through denying plaintiff a promotion, subjecting her to baseless disciplinary actions, and terminating her employment.

30.      As a proximate result of defendant's illegal acts of race discrimination against plaintiff, plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proven at trial.

31.     Plaintiff is entitled to appropriate relief pursuant to Title VII, including compensatory damages and reasonable attorneys' fees and costs for her representation herein pursuant to 42 U.S.C. § 2000e-5(k).

## SECOND CLAIM FOR RELIEF
### Retaliation in Violation of Title VII of the
### Civil Rights Act of 1964, *as amended*

32.     Plaintiff hereby incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

33.     As alleged above, plaintiff objected to and refused to carry out management directives that included discriminatory hiring practices.  Additionally, plaintiff participated

7

in an investigation regarding those directives, and disclosed to the investigator her knowledge of the management directive and her objections to the same.

34.     Following plaintiff's objections and participation in the investigation, she was retaliated against, not considered for a promotion, subjected to unfounded disciplinary actions, and ultimately terminated over a period of three weeks.

35.     Defendant retaliated against plaintiff for the above protected activity in violation of Title VII, 42 U.S.C. § 2000e-3.

36.     Defendant's purported reasons for termination of plaintiff were pretextual, and unworthy of belief.

37.     As a proximate result of plaintiff's opposition to discriminatory hiring practices, and defendant's subsequent retaliatory acts against plaintiff, plaintiff has suffered substantial damages, including loss of income and benefits and other economic losses, mental anguish and emotional distress, loss of reputation and quality of life, and other damages to be proven at trial.

38.     Plaintiff is entitled to appropriate relief pursuant to Title VII, including compensatory damages and reasonable attorney's fees and costs for her representation herein, as set forth above.

## THIRD CLAIM FOR RELIEF
### Race Discrimination and Retaliation - Violations of 42 U.S.C. § 1981

39.     Plaintiff hereby incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

40.     At all times pertinent to this action, plaintiff was a protected member of a class as an individual of African-American race, ancestry, and descent, and objected to and opposed hiring practices that were a violation of 42 U.S.C. § 1981.

41.     Following her objection to discriminatory hiring practices and her assistance and participation in the investigation into the same, she was retaliated against, not considered for a promotion, subjected to unfounded disciplinary actions, and ultimately terminated over a period of three weeks.

42.     Defendant intentionally discriminated against plaintiff as a result of her race, African-American, and her objection and opposition to discriminatory hiring practices based on race, during the course of her employment.  The ultimate and unlawful termination of plaintiff's employment is in violation of the Civil Rights Act of 1866, 42 U.S.C § 1981, as amended by the Civil Rights Act of 1991.

43.     Defendant's reasons for the termination of plaintiff were pretextual, and unworthy of belief.

44.     As a proximate result of defendant's illegal acts of intentional discrimination including plaintiff's unlawful termination based on her African-American race, ancestry, and descent, and opposition to race-based discriminatory hiring practices,  plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proven at trial.

9

45.     Plaintiff is entitled to appropriate relief pursuant to 42 U.S.C. § 1981, as amended, including compensatory damages and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF
### Wrongful Discharge in Violation of the Public Policy of North Carolina

46.     Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

47.     The public policy of North Carolina, as expressed in N.C. Gen. Stat. § 143-422.2, mandates that employers of fifteen or more employees shall not discriminate on the basis of race or engage in discriminatory practices in the workplace.  At all times pertinent to this claim, defendant employed in excess of fifteen employees.

48.     As stated above, plaintiff was an African-American protected by the public policy of North Carolina and, who was, at the time of her termination, consistently performing at a level higher than other employees who were similarly situated.

49.     Plaintiff, upon the issuance of a directive from her superior to engage in discriminatory practices, refused to follow the directive and objected to its issuance. Further, plaintiff participated in an investigation into those discriminatory practices, and noted her objections.

50.     Following that investigation, she was retaliated against, not considered for a promotion, subjected to unfounded disciplinary actions, and ultimately terminated over a period of three weeks.

10

51.     Defendants' reasons for its termination of plaintiff were pretextual, and unworthy of belief.

52.     Defendants wrongfully and intentionally discriminated against plaintiff because of her objection to discriminatory practices, in violation of the public policy of North Carolina, as follows:

    a.  In criticizing plaintiff's performance without legitimate justification, in the time period leading up to plaintiff's termination;

    b.  By refusing to consider her for promotion to a position for which she was well-qualified;

    c.  In subjecting her to unfounded and baseless disciplinary action; and

    d.  In terminating plaintiff's employment without a legitimate, non-discriminatory basis.

53.     Plaintiff will suffer irreparable harm in the absence of equitable relief from this Court, and there is no adequate remedy at law to prevent such harm. Accordingly, plaintiff is entitled to declaratory, injunctive and equitable relief including reinstatement of plaintiff to her position with defendants.

54.     As a proximate result of defendants' violations of the public policy of North Carolina, plaintiff has incurred and suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of quality and enjoyment of life, and employment reputation; and other losses to be proven at trial.

11

55.     The acts of defendant, as described above, were deceptive, willful and wanton, and evinced an intentional or reckless indifference to and disregard for the civil rights of plaintiff.  Aggravating circumstances concerning defendants' conduct are provided in ¶¶ 7-23 above.  Accordingly, plaintiff is entitled to punitive damages in an amount to be determined by the jury.

## PRAYER FOR RELIEF

The plaintiff requests the following relief:

(1)     That plaintiff be reinstated to her position with defendant, with back pay and all benefits and seniority rights;

(2)     That plaintiff recover of the defendant compensatory damages in an amount in excess of $100,000;

(3)     That plaintiff recover punitive damages in an amount to be determined by the jury;

(4)     That plaintiff recover the costs of this action, including reasonable attorneys' fees for her representation herein as required in 42 U.S.C. 2000e, *et. seq*, and 42 U.S.C. § 1988;

(5)     That plaintiff recover pre-judgment and post-judgment interest on all damages awarded herein; and

(6)     That this Court grant such other relief as it deems just and appropriate.

12

**Request for Jury Trial**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff hereby demands a

trial by jury on all issues presented herein.

This is 16th day of November 2020.

> /s/ R. Michael Elliot
> R. Michael Elliot (42806)
> Attorney for Plaintiff
> Elliot Morgan Parsonage, PLLC
> 300 E. Kingston Ave, Suite 200
> Charlotte, NC 28203
> Telephone: (704) 707-3705
> Email: michaelelliot@emplawfirm.com